## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### EDWIN GERARD JOHNSON
### also known as ED JOHNSON,
### also known as TONY C.

I, Anthony D. Campos, being duly sworn, depose and state as follows:

1. I am a Deputy United States Marshal currently assigned to the Protective Intelligence Unit of the United States Marshals Service (USMS), District Of Columbia. I have been a Deputy United States Marshal (DUSM) for approximately 3 years. During my service as a DUSM, I have conducted multiple successful criminal, fugitive, and protective investigations. I have received specialized training on conducting investigations over a combined 23 week period at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia during the Basic Deputy US Marshal Course and the Criminal Investigators Course. I have personally arrested approximately 40 individuals for varying violations of the United States Criminal Codes. Additionally, I have both led and assisted in multiple investigations that resulted in successful arrests of persons who have violated the United States Criminal Code.

2. I am submitting this affidavit as a basis for a criminal complaint and arrest warrant for Edwin Gerard **JOHNSON**, for False Personation of a United States Official in violation of 18 U.S.C.§ 912 and for Wire Fraud in violation of 18 U.S.C. 1343.

3. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests. This affidavit is based upon my personal knowledge and upon information reported to me by other law enforcement officers during the course of their

1

official duties. It is not an exhaustive account of the investigation to date. I was provided the following information jointly by the Washington DC Metropolitan Police Department (MPDC), the U.S. Park Police (USPP), and the United States Marshals Service Communications Center, Washington, D.C.

4. Edwin Gerard JOHNSON (hereinafter referred to as "JOHNSON") is described as a Black male, born February 26, 1983, 5 foot-8 inches tall, approximately one hundred eight-five pounds, brown eyes, and black hair. "JOHNSON's" FBI number is 778388CC0.

5. On February 16, 2005, at approximately 9:30 a.m., I was notified that earlier that morning at approximately 1:50 a.m., a male caller placed a call into the United States Marshals Service Communications Center requesting police assistance. Court Security Officer (CSO)/Special Deputy U.S. Marshal Gonzales was staffing the Communications Center when the call came in. The caller identified himself as "Deputy United States Marshal Ed Johnson." "JOHNSON" informed CSO Gonzales that he was a Deputy U.S. Marshal from the U.S. District Court Warrant Squad and that he was working a case in the vicinity of New York and Georgia Avenues, Northwest, Washington, D.C. "JOHNSON" stated that he and his partners were at the time, being chased by the suspects and that the suspects had begun to "fire" their weapons from their vehicle at "JOHNSON" and his partners. CSO Gonzales immediately placed "JOHNSON" on hold and telephoned the Metropolitan Police Department (MPDC) communications center and spoke to the Watch Commander, B. Hammett. Commander Hammett stated that MPDC communications center had been receiving phone calls from an individual identifying himself as "Deputy U.S. Marshal JOHNSON" since approximately 1:18 AM. According to Hammett, "JOHNSON" called MPDC several times claiming to be a Deputy

U.S. Marshal and stated that "shots" had been fired and that he needed additional immediate police assistance. MPDC communications center was able to get a telephone number from the caller identification system that displayed when "JOHNSON" called, the number was identified as 202-494-6264.

6. MPDC, in response to the calls for assistance from "Deputy U.S. Marshal JOHNSON", dispatched several police units to assist "JOHNSON" and his partners. According to MPDC Detective Larry Best, several units were diverted from previous residential calls- for-service to assist "JOHNSON". MPDC dispatcher Virginia Sanford stated that MPDC Communications Center diverts all available police units from routine assignments to assist officers when a "priority run" call, or "10-33" (police officer needs assistance) call is received, such as the call from "JOHNSON."

7. On February 16, 2005, I received a phone call from MPDC Detective Larry Best who informed me that he was notified by MPDC Communications Center at approximately 3:00 a.m. of the caller, and was given the contact number from the caller identification system that displayed as being the number that "JOHNSON" was calling from. Best stated that he called "JOHNSON" and had several phone conversations with "JOHNSON" in the morning hours of February 16, 2005. Best stated that the caller identified himself as "Deputy U.S. Marshal JOHNSON". Best stated that through a series of conversations, he became suspicious of "JOHNSON" and confronted him on the suspicion that he was not a Deputy U.S. Marshal. When confronted, "JOHNSON" stated that he was not a Deputy U.S. Marshal and that had he made-up the story about the suspects firing at him and his partners. "JOHNSON" additionally stated that he placed the calls because he really likes the Marshals, and because he had been

3

drinking all night. Detective Best also stated that "JOHNSON" told Best his first name was Ed. and that his address was 6619 Arnold, Capitol Heights, MD. "JOHNSON" also acknowledged that what he had done was wrong. Subsequently, Detective Larry Best called me and informed me of the incident.

8. On February 16, 2005, further investigation revealed that the subscriber information on telephone number 202-494-6264 indicated that the phone number was registered to: "JOHNSON Transport, 6616 Ronald, Capitol Heights, MD", and according to the subscriber information, the user of the telephone was "Edwin JOHNSON" with an additional contact telephone number of 202-348-9447. The address and name that "Deputy U.S. Marshal JOHNSON" gave to Detective Best was almost identical except for one digit in the dwelling address, and "JOHNSON" told Detective Best the street name was "Arnold" and the subscriber information returned with "Ronald".

9. Based on the subscriber information, I was able to determine that the caller was Edwin Gerard JOHNSON, Social Security Number 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 or 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 and FBI Number 778388CC0. JOHNSON has a criminal history of arrests dating back to 2003.

10. On March 3, 2005, I was notified by MPDC Detective Larry Best that "JOHNSON" had been in contact with an MPDC dispatcher, heretofore referred to as Witness One. Witness One stated that on or about February 16, 2005, she was called by an individual who identified himself as a Deputy U.S. Marshal. He told her his name was "JOHNSON." He called her at the MPDC Communications Center. "JOHNSON" asked her to provide him with information about an individual who "JOHNSON" identified by name. "JOHNSON" further indicated that he had already run the individual's name through the Washington Area Law Enforcement System

4

(WALES). National Criminal Information Center (NCIC) and the National Law Enforcement Telecommunications System (NLETS) and was trying to get a warrant executed for a prostitution-related offense. Witness One, believing that "JOHNSON" was a Deputy U.S. Marshal utilized the WALES system and provided "JOHNSON" with a Virginia address for the individual after "JOHNSON" gave the dispatcher a Virginia tag number to "run" through the WALES system. The WALES and the information derived from it is accessible only to law enforcement officers. Witness One additionally stated that "JOHNSON" spoke about how he worked with "rookies" and how he also worked with older employees that didn't know that job as well as he did. Witness One said that she met with "JOHNSON" off-duty and witnessed "JOHNSON" having what she described as a badge hanging from a chain worn around his neck. Witness One also stated that during one of the telephone conversations she heard what she believed to be a police radio in the background.

11. On March 15, 2005, I interviewed Edwin Gerald Johnson who voluntarily met me at the U.S. District Courthouse and presented a D.C. photo identification card confirming his identifiers. During the interview JOHNSON stated that he worked as a bail enforcement agent and "skip-tracer" who locates fugitives and returns them to correctional facilities in exchange for bail recovery rewards. He admitted that he is not a law-enforcement officer. He further stated that on several occasions on or between February 13, 2005 to on or about February 16, 2005, he was in search of a fugitive when he claimed that he was being chased by two sets of individuals in two separate vehicles. JOHNSON was played a portion of the 911 audio tapes from the February 16, 2005 incident and JOHNSON positively identified himself as the caller. He admitted that he was the "Ed Johnson" that had represented himself as a U.S. Deputy Marshal in

5

the early morning hours of on or about February 16, 2005, when he contacted the MPDC Communications Center so that he would receive a priority response from MPDC as an "officer needs assistance." JOHNSON further stated that he thought that by identifying himself as a Deputy U.S. Marshal he would get faster or better police response than had he identified himself as a citizen. He also admitted that he contacted a dispatcher and represented himself as a Deputy U.S. Marshal in order to obtain information on an individual that he was looking for who was allegedly "wanted" on an arrest warrant so that he could get paid for locating him.

12. On April 1, 2005, I was notified by MPDC Detective Best that earlier that day the United States Park Police entered into a high-speed pursuit with JOHNSON that resulted after law enforcement officers attempted to stop his vehicle for an incident that was reported on March 31, 2005. An investigation into that incident revealed that on March 31, 2005, Detective Sergeant Arthur JACOBSEN, was notified by a female prostitute that the she was approached by a male who was driving a car in the 1400 blk K Street, N.W. Washington, D.C. After entering his vehicle the male driver told her that he was a Deputy United States Marshal looking for a wanted person. The driver drove her out of the area and asked her if she "was going to pay her way back?" The female stated no and the male driver told her that she would have to either pay, go to jail, or "do it raw" (referring to having unwanted sex without a condom). The female gave the male driver $40.00 dollars and refused to have sex with him. The male driver drove her back to the area where he initially picked her up, and then threatened her by telling her that he would return in approximately one hour and that she better have $300.00 dollars for him or he would beat her, arrest her or "do her raw."

13. After the male driver left the area, the female flagged down Detective Sergeant

6

JACOBSEN and notified him of the event. While JACOBSEN was talking with the female, the male driver contacted the female witness via cellular telephone. The male driver then asked the female witness to hand the phone to the police officer she was speaking to. When JACOBSEN spoke to the male driver he identified himself as "Tony C" of the United States Marshals Service. "Tony C" then explained that he was in the area looking for a wanted subject and that JACOBSEN was talking to his confidential informant. JACOBSEN attempted to have "Tony C" meet with him in the area. "Tony C" agreed, but made several return phone calls to JACOBSEN, making excuses why he could not meet at that time. A separate witness who also had previous contact with the male driver notified JACOBSEN that if the male returned to the area she would flag him down and wave her hand as a signal to identify the male driver to JACOBSEN who would park near-by. The male driver re-entered the block and the witness flagged him down. When JACOBSEN saw the signal, he attempted to stop the vehicle that the male was driving using his emergency lights and audible siren but the male driver accelerated and fled. The chase travelled through the streets of the District of Columbia and ended in Charles County, Maryland where Edwin Gerard JOHNSON, Jr. Was arrested and charged with Fleeing to Evade Law Enforcement, Reckless Driving and Operating on a Suspended License.

14. Based on my education, training, and experience and the facts and circumstances described above I have probable cause to believe that Edwin Gerard JOHNSON JR., on the morning of February 16, 2005, in violation of 18 U.S.C. §912, did place several telephone calls to MPDC Communications Center located on McMillan Drive, N.W., Washington, D.C. and the United States Marshals Service Communications Center located on Constitution Avenue, N.W. Washington, D.C. to obtain priority assistance wherein he falsely identified himself as a Deputy

United States Marshal, an officer and employee of the United States Government. As a result of JOHNSON'S telephone calls, JOHNSON did receive "Priority run" treatment, in that several MPDC Police Units were diverted from other calls in an effort to assist "JOHNSON." Additionally, there is probable cause to believe that on February 16, 2005, after falsely identifying himself as a Deputy U.S. Marshal to Witness One at the MPDC 911 Dispatch Center for the purpose of requesting information, JOHNSON did defraud the Metropolitan Police Department and did obtain sensitive law enforcement criminal history information in an effort to obtain bail enforcement reward monies based on his false and fraudulent representations and pretenses in violation of 18 U.S.C. § 1343.

_____
Anthony D. Campos, Deputy U.S. Marshal
United States Marshal's Service
District of Columbia

Sworn to and Subscribed before me this ___ day of ___ April, 2005.

APR 1 4 2005

_____
United States Magistrate Judge

**Deborah A. Robinson**
**U.S. Magistrate Judge**