IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  05-263-01 |
| | : | |
| v. | : | District Judge Reggie B. Walton |
| | : | |
| EDWIN GERARD JOHNSON, | : | Sentencing Hearing: November 10, 2005 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing and requests the Court  sentence Mr. Johnson to a 33-month period of incarceration, a fair and reasonable sentence pursuant to the U.S. Sentencing Guidelines, and consistent with the Presentence Investigation Report and plea agreement entered into by the government and the defendant pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  Furthermore, a 33-month sentence is fully consistent with the purposes of sentencing under 18 U.S.C. § 3553(a)(2); to be proportionate, promote respect, provide just punishment, deter, protect the public, and provide for the defendant's medical and vocational needs.

**Procedural Posture**

Mr. Johnson was arrested on March 31, 2005, and charged with violating 18 U.S.C. § 912, False Impersonation of Officer or Employee of the United States, and 18 U.S.C. § 1343, Wire Fraud.  On July 19, 2005 the Government filed an information charging Mr. Johnson with violating 18 U.S.C. § 912, False Impersonation of Officer or Employee of the United States, and 18 U.S.C. § 1951, Interference With Commerce By Threats Or Violence.  On August 16, 2005 Mr. Johnson conditionally pled guilty under Federal Rule of Criminal Procedure 11(c)(1)(C) to

both counts.

## Sentencing Scheme

On the count of False Impersonation of Officer or Employee of the United States, Mr. Johnson faces potential penalties of up to three years imprisonment, a fine of up to $250,000, and supervised release of up to one year. 18 U.S.C. §§ 912, 3571(b)(3), and 3583(b)(1). On the count of Interference With Commerce By Threats Or Violence, Mr. Johnson faces potential penalties of up to 20 years imprisonment, a fine of up to $250,000, and a period of supervised release of up to three years. 18 U.S.C. §§ 1951, 3571(b)(3), and 3583(b)(1). In addition, Mr. Johnson is required under the plea agreement to pay a special assessment of $200 to the Clerk of the United States District Court prior to the date of sentencing. See 18 U.S.C. § 3013.

With regard to the appropriate guidelines range, the Presentence Investigative Report and plea agreement reach slightly different results. As stated in the Presentence Investigative Report, the applicable Guideline range of incarceration is between 30 and 37 months based upon a final adjusted offense level of 19 and a criminal history category of I. As agreed to in the conditional plea, the applicable Guideline range of incarceration is between 27 and 33 months based upon a final adjusted offense level of 18 and a criminal history of I. Under either calculation Mr. Johnson is in Zone D of the Sentencing Table and would be precluded from probation under the Guidelines.

## Criminal Conduct

On February 16, 2005, at approximately 1:50 a.m., the United States Marshal's Service Communications Center received a call requesting police assistance. The male caller identified himself as "Deputy United States Marshal Ed Johnson." "Deputy Marshal Johnson" informed the Marshal's Service that he was a Deputy United States Marshal from the United States

District Court Warrant Squad and that he was working a case in the vicinity of New York and Georgia Avenues, Northwest, Washington, D.C. Mr. Johnson stated that he and his partners were being chased by individuals that had begun to "fire" their weapons at Mr. Johnson and his partner. The deputy marshal who had answered the phone placed Mr. Johnson on hold and telephoned the Metropolitan Police Department (MPD) Communications Center. The deputy marshal was informed that the MPD Communications Center had received phone calls from an individual identifying himself as "Deputy U.S. Marshal Johnson" starting at approximately 1:18 a.m. According to the commander at MPD, a male called the MPD Communications Center several times claiming to be a "deputy U.S. Marshal." Mr. Johnson had stated that "shots" had been fired and that he needed immediate police assistance. The MPD Communications Center was able to obtain a telephone number from the caller identification system that displayed the caller's telephone number as 202-494-6264.

In response to the calls for assistance from "Deputy U.S. Marshal Johnson," the MPD dispatched police units to assist the caller. Several of those MPD units were diverted from previous residential calls for service to assist the caller. That practice is consistent with the standard procedure followed by dispatchers to divert all available police units from routine assignments to assist officers when a "priority run" call, or "10-33" (police officer needs assistance) call is received.

On February 16, 2005, at approximately 3:00 a.m., the MPD Communications Center noted that its caller identification system displayed telephone number 202-494-6264, the same telephone number used by "Deputy Marshal Johnson" to make the 911 call to the MPD Communications Center earlier that morning. An MPD detective called the individual who identified himself as "Deputy Marshal Johnson" and had several phone conversations with him

3

in the morning hours of February 16, 2005. During these conversations the caller identified himself as "Deputy U.S. Marshal Johnson" until the detective confronted the caller with the suspicion that he was not a Deputy U.S. Marshal. Once confronted, the caller admitted that he was not a Deputy U.S. Marshal. The caller also told the detective that his first name was Ed and that he lived at 6619 Arnold, Capitol Heights, MD. The caller, later identified as Defendant Edwin Johnson, acknowledged that what he had done was wrong.

On February 16, 2005, in addition to his calls to the MPD Communications Center, Mr. Johnson contacted an MPD dispatcher. The dispatcher stated that on or about February 16, 2005 she was called by an individual at the MPD Communications Center who identified himself as a "Deputy U.S. Marshal Johnson". Mr. Johnson asked her to provide him with information about an individual he identified by name. He further indicated that he had already run the individual's name through the Washington Area Law Enforcement System (WALES), National Criminal Information Center (NCIC) and the National Law Enforcement Telecommunications System (NLETS) and was trying to get a warrant executed for a prostitution related offense. The WALES and the information derived from it is accessible only to law enforcement officers. The dispatcher, believing that Mr. Johnson was a Deputy U.S. Marshal, used the WALES to locate a Virginia address of the named individual by running the Virginia tag number provided by Mr. Johnson through the system.

On March 15, 2005, a Deputy U.S. Marshal interviewed Mr. Johnson who voluntarily met him at the U.S. District Courthouse where he presented a District of Columbia photo identification card confirming his identity. During the interview Mr. Johnson stated that he worked as a bail enforcement agent and "skip-tracer" who locates fugitives and returns them to correctional facilities in exchange for bail recovery rewards. He admitted that he is not a law-

4

enforcement officer. He further stated that on several occasions on or between February 13, 2005 to on or about February 16, 2005, he was searching for a fugitive when he claimed that he was being chased by two sets of individuals in two separate vehicles. The defendant, Edwin Gerald Johnson, was played a portion of the 911 audio tapes from the February 16, 2005 incident and positively identified himself as the caller. He admitted that he was the "Ed Johnson" that had represented himself as a Deputy U.S. Marshal in the early morning hours of on or about February 16, 2005, when he contacted the MPD Communications Center so that he would receive a priority response from the MPD as an "officer needs assistance." Mr. Johnson further stated that he believed that by identifying himself as a Deputy U.S. Marshal he would get a faster or better police response than had he identified himself as a citizen. He also admitted that he contacted a dispatcher and represented himself as a Deputy U.S. Marshal in order to obtain information on an individual that he was looking for who was allegedly "wanted" on an arrest warrant so that he could be paid for locating him.

On March 31, 2005, a U.S. Park Police detective was notified by a female prostitute that she was approached by a male driving a car in the 1400 block K Street, N.W. Washington, D.C. She told the detective that after she entered the vehicle the driver told her that he was a Deputy United States Marshal looking for a wanted person. The driver drove her out of the area and asked her if she "was going to pay her way back?" The female stated no and the driver told her that she would have to either pay, go to jail, or "do it raw" (referring to having unwanted sex without a condom). The female gave the driver $40.00 dollars and refused to have sex with him. The driver drove her back to the area where he initially picked her up, and then threatened her by telling her that he would return in approximately one hour and that she better have $300.00 dollars for him or he would beat her, arrest her or "do her raw."

After the driver left the area, the female flagged down the U.S. Park Police detective and notified him of the event. While the detective spoke with the female, the driver contacted her via cellular telephone. The telephone indicated that the incoming call was made from 202-494-6264. The driver then asked her to hand the phone to the police officer she was speaking to. When the detective spoke to the driver he identified himself as "Tony C" of the United States Marshals Service. "Tony C" then explained that he was in the area looking for a wanted subject and that the detective was talking to his confidential informant. The detective requested that "Tony C" meet with him in the area. "Tony C" agreed, but later made several return phone calls to the detective to give excuses as to why he could not meet at that time. A separate witness, who had previous contact with the same driver, notified the detective that if the driver returned to the area she would flag him down and would signal the detective of his appearance by waving her hand. The driver re-entered the block and the witness flagged him down. When the detective saw the signal, he attempted to stop the vehicle using his emergency lights and audible siren but the driver accelerated and fled. The chase proceeded through the streets of the District of Columbia and ended in Charles County, Maryland where Mr. Johnson was arrested and charged with Fleeing to Evade Law Enforcement, Reckless Driving and Operating on a Suspended License.

## Argument

### I. The Recommended Sentence Is Fair And Reasonable Under The United States Sentencing Guidelines

*Booker* made clear that in determining the appropriate sentence for a defendant, federal courts should calculate and consider the applicable guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted

6

sentencing disparities. *United States v. Booker*, --- U.S. ----, 125 S.Ct. 738, 757 (2005). While the United States Sentencing Guidelines are only persuasive authority, they nevertheless incorporate and reflect the goals of sentencing. *Id.* A 33-month sentence is consistent with the sentencing range recommended by the U.S.S.G. under either the calculation used by the Presentence Investigation Report or the conditional plea agreement.

      According to the Presentence Investigation Report, Mr. Johnson's final offense level is 19. The base level for Mr. Johnson's charge of Impersonation of An Officer or Employee of the United States is 18 with two-level increases pursuant to § 3C1.2 (recklessly endangering others during flight) and § 2B3.2(a) (expressly or impliedly threatening death, bodily injury or kidnaping), totaling an adjusted level of 22. Mr. Johnson's base level and adjustments for his charge of Interference With Commerce By Threats Or Violence are below this by an amount of nine levels, which under United States Sentencing Guidelines § 3D1.4, adds no levels to the highest offense. Mr. Johnson's acceptance of responsibility and cooperation with authorities decrease this number three levels to a final offense level of 19. Mr. Johnson's criminal history category is I because he has no prior convictions. This yields a recommended range of incarceration between 30 and 37 months. A 33-month period of incarceration is at the middle of this range and is therefore consistent with the United States Sentencing Guidelines.

      According to the conditional plea agreement, the final offense level is one level lower, 18. The difference arises because the Presentence Report adds a two level increase pursuant to § 2B3.2(a) for the Extortion count because the defendant was "expressly or impliedly threatening death, bodily injury or kidnaping, an increase not included in the plea agreement. As such the plea concludes that Mr. Johnson's final adjusted offense level for that offense would be 20. Since Mr. Johnson's base level for Impersonation count is 13, which is seven levels below

the adjusted offense level for the Extortion charge, the U.S.S.G. pursuant to § 3D1.4(b) yields a combined offense level of 21 with a three level reduction for acceptance of responsibility or a final adjusted level of 18. As his criminal history category is I, this produces a recommended incarceration range of 27-33 months. Thirty-three months' incarceration is therefore within the ranges suggested by both an offense level of 19, as contained in the Presentence Investigation Report, and 18, as contained in the plea agreement.

The disparity between the sentencing range and maximum penalty of 20 years imprisonment for Interference With Commerce By Threats Or Violence is fair and reasonable in light of the facts of Mr. Johnson's case. As U.S.S.G. § 2B3.2 makes clear, there are significant increases to the level of a 18 U.S.C. §§ 1951 offense depending on the quantity of money extorted, degree of injury to a party, or whether or not a firearm was discharged. Mr. Johnson succeeded in obtaining by coercion only $40, caused no physical injury, and never discharged a firearm. Therefore, he is being asked to answer for conduct that, while certainly serious, must be judged in light of factors that mitigate against the harsh statutory penalty for the crime of Extortion. A 33 month period of incarceration is, therefore, consistent with an offense level of 18 or 19, and properly accounts for the fact of this case.

      **II.**    **The Recommended Sentence Fairly and Reasonably Meets the Sentencing Policy Objectives of 18 U.S.C. §3553(a)(2).**

In addition to being within the range contemplated by the application of the U.S.S.G., a 33 month period of incarceration is a proportionate, correctional, just and will serve to deter future criminal actions, as well as not deny Mr. Johnson his medical and vocational needs. The recommended sentence in this case meet objectives that (1) reflect the seriousness of the offense; (2) promote respect for law; (3) provide just punishment; (4) afford adequate deterrence; (5)

protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care.. Booker, --- U.S. at ---, 125 S.Ct. at 757; citing 18 U.S.C. § 3553(a)(2).

     First, a 33-month period of incarceration reflects the seriousness of Mr. Johnson's conduct, which endangered the safety and well-being of others. Mr. Johnson did not merely impersonate an officer and extort money. Rather, he impersonated an officer to re-route all available Metropolitan Police Department officers in the area away from their community calls. He called several times to ensure police officers had to scour several distinct areas to look for him. He called *two* law enforcement agencies: the Metropolitan Police Department and the United States Marshals Service. Most egregiously, Mr. Johnson went on to impersonate a police officer on a second occasion in order to abuse the power attendant to the position. Mr. Johnson isolated a prostitute in his car, pretended to be a United States Marshal, and threatened her for sex and money. In so doing, he exploited a fear produced from an insinuation that by being a marshal, he could use force or arrest powers and not be held accountable. In short, Mr. Johnson impersonated an officer in order to recklessly endanger police officers and to threaten violence on a civilian. Further, he extorted money in such a way as to exploit the helplessness of a woman that belongs to a class of persons (prostitutes) that he knew would be disinclined to report threats to law enforcement. These criminal actions, above the minimal conduct necessary to constitute a violation of his charged offenses, warrant a sentence above the minimum suggested in the sentencing guidelines. Thirty-three months is a proportionate sentence to the seriousness of his conduct.

     Second, a 33 month period of incarceration will promote a respect for law noticeably absent in Mr. Johnson. Part of a respect for law is respect for its enforcers. In February, Mr.

Johnson diverted authorities from community calls and demanded they protect him from gunfire. There is absolutely no evidence shots were ever fired at Mr. Johnson or that he was chased. Yet Mr. Johnson's conduct was perfectly calculated to create a sense of urgency and haste in responding police officers and to place them (and the community) at heightened risk of injury in an accident. Later in February, Mr. Johnson again impersonated a Deputy United States Marshal in order to obtain confidential information about a citizen. In March, Mr. Johnson went even further by fraudulently impugning the reputation of the United States Marshals Service – claiming to be a U.S. deputy marshal who was abusing his authority and violating the law by threatening his victims in order to extort sex and money from prostitutes. Finally, when confronted by a police officer, he engaged in a reckless, high-speed chase into Maryland. While Mr. Johnson ultimately admitted his guilt, the Court's sentence must reflect his manifest disrespect for the law, for the safety of the community, and for the well-being of those responsible for its enforcement.

      Third, a 33-month sentence is just. Thankfully, Mr. Johnson was stopped before he physically harmed anyone. The amount of money he successfully extorted was only $40. At the same time, Mr. Johnson's criminal conduct is more than the minimum criminality that would subject him to criminal liability. He impersonated an officer to *abuse* the position. He did not physically harm anyone but he *threatened* and *recklessly endangered* them. He ultimately took responsibility for committing the criminal offenses to which he pled, but only evading, fleeing, and lying to law enforcement. Based upon his actions, Mr. Johnson deserves 33 months of incarceration.

      Fourth, this sentence will adequately deter others tempted to engage in conduct like Mr. Johnson's. It is axiomatic that to deter, punishment must be greater than the benefit of criminal

conduct. Mr. Johnson financially benefitted only $40, but he psychologically benefitted a great deal from the abuse of power over others. He misrepresented himself for two hours on February 16, 2005 and brought routine police activity in his area to a complete halt. On March 15, he again misrepresented himself to insinuate arrest to demand sex and money. The Assistant United States Attorney, contrary to its requests to defense counsel, has received 12 letters from Mr. Johnson voicing a heady combination of anger, evangelism, fear, desperation, racial indignation, and denial. Nowhere does Mr. Johnson take responsibility, apologize, or so much as mention concern for the victims of his offenses. Thirty-three months incarceration is consistent with the principle that Mr. Johnson's sentence be greater than the benefit of his crimes, while still being proportionate to the harm caused.

    Fifth, this sentence will protect the public by removing Mr. Johnson for a period of time sufficient to stabilize his conduct. The Presentence Investigation Report indicates he has trouble conducting himself peacefully when he is under stress and/or does not take appropriate medication. Although Mr. Johnson has no record of previous convictions he does have several assault charges pending in the District of. Columbia and in Maryland. The Government believes that Mr. Johnson will have an opportunity to seriously consider the ramifications of his actions while mental health professionals in the federal correctional system can determine what, if any, psychiatric, medical or familial assistance he may need to stabilize his behavior.

    Sixth and finally, 33 months imprisonment will not deny Mr. Johnson his vocational and educational needs. Any vocational training can be provided to him while he is incarcerated and continue when he is on supervised release.

**Conclusion**

In all, the sentence agreed upon in the Rule 11(c)(1)(C) plea agreement and recommended to the Court in this memorandum is reasonable and fair in this case. The period of incarceration is in the U.S.S.G. range. It reflects the seriousness of the offense and provides just punishment. It is a sentence that promotes respect for law, provides adequate deterrence, and protects the public.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney for the District of Columbia

_____
HEIDI M. PASICHOW
Assistant U.S. Attorney
D.C. Bar # 370-686
United States Attorney's Office
555 4th Street, N.W. Room 11-445
Washington, D.C. 20001
202-514-7533
Heidi.Pasichow@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of the foregoing document has filed electronically and sent to counsel for defendant, Tony Miles, Assistant Federal Public Defender, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004, on this 4th day of November, 2005.

_____
HEIDI M. PASICHOW
Assistant United States Attorney